Wilson, J.
The plaintiff and the individual defendants are all builders and contractors in the city of Denver. The great length of the complaint precludes its insertion in full. Its material averments are: that in the said city, and in the state of Colorado, the architects, and also the owners of ground who contemplate erecting buildings, are the patrons and customers of the contractors ; that a general and universal custom has been adopted, whereby architects solicit contractors and builders to examine plans and specifications prepared by them for proposed buildings, and deliver their bids to the said architects, who afterwards, in the presence of the contractors, open the several bids so solicited and award the contract. That at the time set forth in the complaint, the individual defendants were united and combined together for the purpose of regulating bids of contractors for the construction of such buildings as might be erected within their said city and state, by pledging themselves to not bid less than certain amounts previously agreed upon by them for the whole or parts of such projected buildings, and more particularly were thej’' combined and united and confederated together to prevent by inducement, threats or intimidation, not .only all other contractors and builders who were not members of the defendant association (a corporation of which it was alleged the individual defendants were all members) from bidding or entering into any contract to build any structures to be erected within said city or state, but also for the express purpose of inducing others, — the patrons and cus *27 tomers of such contractors, — to 'cease patronizing, trading or doing business with any contractor or builder not a member of such organization ; and that the express purpose of such combination and confederation was to injure those who were not members of such association, and to benefit each and all of said defendant persons, at the expense of other contractors who were not members of the association, and that all of the said unlawful purposes and objects were acquiesced in, ratified and acted upon, not only by the said members of the association, but also by the said defendant association itself. As specific acts of injury to the plaintiff, in furtherance of this alleged conspiracy and confederation, the complaint charged that certain architects in Denver, — the firm of Marean & Norton, — being about to construct a building’ for one McCartney, requested plaintiff to make a bid therefor ; that when he presented his bid, said architects informed him that they would not receive it for consideration, because they had received a written notice, signed by each of the individual defendants herein, and in words as follows :
“ Denver, May 10th, 1897.
“Messrs. Marean & Norton.
“Gentlemen: We, the undersigned members of the Master Builders’ Association, decline to bid on the McCartney building if Mr. Domascio’s.bid is received in competition.
“ Respectfully yours.”
The complaint further charges that afterwards the individual defendants, — through one of them, William Simpson,— notified,. verbally, William Cowe, another architect, that should he accept or receive any offer or bid from plaintiff for the construction and erection of a building contemplated to be erected by him, that each of said defendants would refuse to bid upon the said work, or allow anyone else so to do, and thereby financially ruin and destroy the business of said architect by inducing others to desist from patronizing or employing him; that said Simpson stated to said Cowe, that it was the intention of defendants to protest against the plain *28 tiff doing any work or labor for any of the architects within the city of Denver; that all of said threats, words, inducements and acts were done with the express purpose to injure plaintiff and destroy his business, and benefit the said defendants, and each of them, at the expense of plaintiff, and were made and done without legal excuse and in wilful disregard of plaintiff’s rights, and were a wanton and malicious interference ; that by reason thereof they did induce the said Cowe to notify plaintiff that he could not accept plaintiff’s bid for the building proposed. That the defendants had adopted the above set forth systematic course of threats, inducements and intimidations, which if persisted in would destroy the plaintiff’s business, and had expressly stated to divers and various other persons, more particularly to the above mentioned architects, that they proposed to so continue their systematic course of injury to the plaintiff, and to destroy his business by inducing customers to refrain from doing business with him. The individual defendants filed a verified answer, specifically denying all of the material allegations of the complaint, except the execution and delivery of the notice to Marean & Norton. They denied that the Master Builders’ Association was composed of the individual defendants, but on the contrary, averred that at least four of the defendant individuals and firms were not members of said association. They further averred that said association included in its membership only about fifteen contractors and builders, whereas outside of the association and not members thereof, there were about fifty builders and contractors in the city of Denver, and also that none of the ai’chitects in said city were members of the association; they denied that they, or any of them, through the defendant Simpson, who was not a member of the association, ever notified any patron or customer of plaintiff that should he accept or receive any offer ■ or bid from plaintiff for the construction of a building, that they would refuse to bid thereon; denied that they, or any of them, ever stated to said Cowe that they would induce others to desist from patronizing or employing him if he, received *29 any bid from plaintiff, or that they ever stated that it was their purpose to protest against the plaintiff doing any work or labor for any architect in the city of Denver, or that it was their purpose to enter similar protests whenever any of plaintiff’s patrons should open bids for the construction of buildings, and denied that the defendant Simpson was in any manner authorized or empowered to speak or act for the association, or for the individual defendants. The Master Builders’ Association filed a separate answer, in which, after admitting its incorporation, it denied all the specific allegations of the complaint with reference to it; denied that it had anything whatever to do, or that any purpose of its organization had anything to do with the regulating of bids of contractors and builders for the construction of any building, in any manner or form whatsoever, or anything in any way relating to the prevention of any person or persons whomsoever, from bidding upon or entering into building contracts ; denied that it had in any manner either acquiesced. in or ratified, or in any manner acted upon any of the purposes or objects alleged in the plaintiff’s complaint. No reply was filed.
The case being called for trial, the defendants objected to the introduction of any testimony on the ground that the complaint stated no facts to constitute a cause of action. This objection was overruled. Thereupon, the case was submitted upon an agreed statement of facts, the attorneys for the defendants admitting in open court that the letter or notice to Marean & Norton was written, signed, and delivered by them to the architects, as stated, and further that the architects would testify that except for such notice, they would have received plaintiff’s bid in competition with the others. Defendants further admitted that the plaintiff could show, by reason of the time which he spent in connection with the bid and in damage to his business, he sustained a loss to the amount of #50.00. This showing, however, to be considered as made and admitted by the court against the objection of defendants that it was not admissible under the pleadings ; *30 that there was no right of recovery of any damages, even nominal damages, or any other sum, on account of the alleged wrongs, and that nothing appeared which would justify the court either in awarding any damages or in granting injunctive relief. The court found the issues for the plaintiff, awarding him judgment for damages in the sum of $50.00, and a permanent writ of injunction directed to each of said defendants and the officers and members of the Master Builders’ Association of Denver, restraining them, and each of them, from in any manner or way interfering witli or molesting the business of plaintiff by sending written or verbal messages to any of the architects of Denver, notices or messages of their objection to the bidding by the said plaintiff upon any contemplated work, as well also inhibiting them from “ in any manner or way interfering with the business of the said plaintiff or inducing others to desist or refuse to employ ” him.
In cases arising from “ strikes ” or “ boycotts,” the most delicate and frequently close legal questions are presented, and in their determination courts cannot be too careful to avoid trenching upon the rights and liberties of the individual citizen, guaranteed by and universally recognized under our constitution and our system of government. It is true that no question growing out of a “ strike ” is here involved, the controversy not being between employers and employés, nor capital and labor. It does, however, if the allegations of the complaint are to be taken as true, involve some legal principles which are included in, arise in, or are closely allied to those controlling the determination of cases of boycott. Whether such a case is here made by the specific allegations of plaintiff and by the evidence as will constitute a good cause of action, and a wrong for which the law will give a remedy, is the question to be determined. It may be stated as a general principle, so universally recognized in this country as to become axiomatic, that every man has a lawful right to work for or deal with, or to refuse to work for or-deal with, any man or class of men as he sees fit; and upon the same *31 principle he has a lawful right to compete with, or refuse to compete with, any person or persons, or class of men, as he sees proper. A lawyer may refuse to be associated in a case with another; a physician may decline to be called in consultation with another physician, and a mechanic may decline to enter into competition for a contract with any other mechanic, or class of mechanics. This, each of these parties may do in the exercise of his individual right and liberty, and whatever may be his motive, or whatever may be the resulting injury arising from it, the law can afford no redress. There may be some loss to the physician, resulting from- the refusal of another to act in consultation with him, and to the lawyer whom another may refuse to have employed as his associate, but the actual refusal by these parties, being lawful, will not sustain an action by the other for damages, and what one lawyer or physician or mechanic may lawfully do, any number may do. In'the written notice of Marean & Norton, there was no threat, -expressed or implied, either against the plaintiff or against the architects ; nor was there any language even suggestive of coercion or intimidation. The latter were at perfect liberty to have received the bid of the plaintiff, and in so doing not have become hable to any threatened loss, injury or penalty. It cannot even be said in this case that they would have been embarrassed by reason of the number of contractors who had signed this notice, because it is undisputed that there were at least fifty other contractors in the city, from whom they could have solicited and received bids. We think, therefore, there was nothing in this specific act which could have sustained a judgment against the defendants for damages or the issuance of the injunctive writ. The Co we case still less furnishes any ground for the judgment.' The answer of the defendants specifically denied that Simpson was authorized by-the other defendants, or any of them, to act or speak for them in this matter, and there was neither evidence nor admission to sustain any allegation of the complaint in respect thereto. The judgment against the defendant association cannot be sustained on any *32 ground. The acts charged against it by the complaint were specifically denied, and there was not a scintilla of evidence or admission to the contrary. The views which we have expressed are not only consonant with reason, but we believe are without exception supported by the best authority. We here cite a few. Bohn Mfg. Co. v. Hollis et al., 54 Minn. 223; Macauley v. Tierney, 37 L. R. A. (R. I.) 455; Carew v. Rutherford, 106 Mass. 14; Commonwealth v. Hunt, 4 Metcalf, 111; Hunt v. Simons, 19 Mo. 583; Payne v. R. R. Co., 13 Lea (Tenn.) 507; Brewster v. C. Miller’s Sons et al., 38 L. R. A. (Ky.) 505 ; Cooley on Torts, pp. 278, 688.
The facts and the legal principles here involved are very similar to those in the two cases first cited, and in each there was presented upon the facts a stronger case for relief than here. In each, there was an express agreement among the members of an association not to deal thereafter with wholesale dealers who should at any time sell lumber to those not members of the association. Here was nothing of that kind. Defendants did not notify or threaten the architects that in case they received the bid of the plaintiff, they (the defendants) would thereafter refuse to deal with them. All that the defendants did say to the architects was (giving the notice and the allegations the broadest construction), if you receive the bid of the plaintiff for any contract, we will not give you our bids in competition therewith..
The authorities cited by the plaintiff are not in point, and they can be readily distinguished from the case at bar. As we read them, all expressly turn upon the fact that there was coercion, intimidation or malicious threats to do an unlawful injury.
In Van Horn v. Van Horn et al., 52 N. J. L. 285, there were allegations in the complaint that the defendants, in pursuance of an unlawful conspiracy to ruin the business of plaintiff, had endeavored to prevent her customers and friends from dealing with her, by falsely representing to them that she would not be able to carry on her business, but would have to close up, as she was selling goods that did not belong *33 to her, and living off the proceeds, instead of accounting therefor; also, by sending threatening notes and messages to them, designed to intimidate them from having any dealings with her; also that they threatened to pursue her until she was ruined; also that the defendants, by corrupt, fraudulent and deceitful representations, did induce the wholesale firm which was supplying plaintiff with goods to remove the stock already supplied her, to refuse to deliver to her other goods as agreed for, and to break its contracts with her, leaving her entirely without any stock to sell, or purchasers to buy from her, by means whereof she could not obtain goods, and was driven out of her business and occupation.
In Doremus v. Hennessy, 176 Ill. 608, it was shown that the defendants had induced various persons with whom the plaintiff had contracts to do work, to break such contracts, and also threatened persons with whom she was doing business to utterly ruin their business if they continued to deal with her, and that by means thereof, the business of the plaintiff was utterly destroyed and broken up.
The case of Casey v. Cincinnati Typographical Union No. 3, 45 Fed. Rep. 135, was that of a boycott against a newspaper. The court found it to have been clearly shown that the boycott was to be enforced by threatening loss of business to those who, having no connection with the union, should continue to advertise with, or in any way patronize, the plaintiff.
Even in Jackson et al. v. Stanfield et al., 137 Ind. 592, upon which plaintiff most strongly relies, the court in speaking of the acts or policy in cases of this character which would create a liability for damages, says:
“ It is not a mere passive, let alone, policy; a withdrawal of all business relations, intercourse and fellowship that creates the liability, but the threats and intimidation shown in the complaint.”
All other cases called to our attention by the plaintiff are found upon examination to be of a similar tenor to those to which we have referred.
In his oral admission of fact, which was as we have seen *34 the only evidence in the case, the counsel for defendants used the following language:
“ I have admitted and do again admit, if necessary, that the letter or communication mentioned in the complaint and signed by these defendants, or nearly all of them, was written, signed and delivered by them to the architect as stated.” Plaintiff seeks to base a contention upon the use of the words “ as stated;” that the admission thereby embraced not only the fact of writing, signing and delivering the statement, but all of the allegations of the complaint as to the purpose, objects and intent of the defendants in the giving of such notice. We think this claim entirely untenable. The connection in which the words were used clearly indicate that they had reference only to the alleged writing, signing and delivery of the notice to the architects. If there could be any doubt about this, it would be entirely set at rest by the fact that in their answer the defendants expressly denied the alleged intent to intimidate and coerce, or ruin the business of the plaintiff, or of the architects.
We do not go to the extent of holding that the complaint wholly failed to state a cause of action. It is possible that some parts of it did. We do hold, however, that the allegations of the complaint with reference to the notice to Marean & Norton, signed by defendants, did not of themselves state a cause of action, nor did the proof or admission as to the giving of such notice, and its contents, support any judgment in favor of the plaintiff, nor sustain the court in granting the injunctive writ which it did.
There was not a scintilla of evidence, either by admission or otherwise, against the defendant corporation, the Master Builders’ Association of Denver, and hence the court had no authority whatever to render a judgment, or issue a writ of injunction against it. The judgment will be reversed.

Reversed.